[Civ. No. 10183. Third Dist. Jan. 9, 1962.]

BENEFICIAL STANDARD LIFE INSURANCE COMPANY, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION et al., Defendants and Respondents.

Britton Drew McConnell for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendants and Respondents.

SCHOTTKY, J.—Beneficial Standard Life Insurance Company has appealed from an adverse judgment in an action it brought to obtain a refund of California use taxes assessed by the State Board of Equalization and which were paid under protest.

The facts which were agreed upon are: Plaintiff, Beneficial Standard Life Insurance Company, at all times herein mentioned was a life insurance company incorporated under the laws of the State of California. During the period of July 1, 1947, through June 30, 1955, the plaintiff sold tangible personal property, the gross receipts from the sale of which were $445,013.17. There were approximately one hundred such items of tangible personal property sold during said period, consisting primarily of Cadillac automobiles which were purchased by plaintiff outside the State of California and sold by plaintiff to individual purchasers who took delivery in the State of California for use in this state. In all instances title passed to plaintiff's vendees within this state. No sales taxes were paid at the time of said sales, and plaintiff did not collect use taxes from the vendees. There were assessed upon these transactions $13,279.56 taxes, $2,373.81 interest, and $1,327.96 penalty, totaling $16,981.33. The sum of $16,981.33 was paid to defendant State Board of Equalization on December 7, 1956, which payment was made under protest and was accompanied by a claim for refund. Plaintiff contends there is now due and owing plaintiff from defendant State Board of Equalization the sum of $16,981.33, together with interest thereon at 6 per cent per annum from the date of payment.

The evidence produced at the trial disclosed that in 1948 4 automobiles were sold; in 1949 there were 4 sold; in 1950 there were 5 sold; in 1951 there were 13; in 1952 there were 12; in 1953 there were 18; in 1954 there were 36; and for the half-year 1955 there were 28. Of this total of 120 transactions 104 transactions were taxed. It should be noted that 75 of the automobiles sold were cars used directly in plaintiff's business. Forty-five were brand-new cars which were purchased and then sold immediately to persons connected with the company who thereby obtained the cars at the company's fleet price. Over the 8-year period, July 1948 through June 1955, there were 76 sales of furniture, which furniture had been used in plaintiff's business. Over the 8-year period there were 14 sales of used furniture in 1948; 15 sales in 1949;

8 sales in 1950; 5 sales in 1951; 10 sales in 1952; and 9 sales in 1953; and in 1953 one sale of a boat. In 1954 there were 15 sales and in the first 6 months of 1955 there were no sales.

No sales taxes were paid at the time of the transactions nor did plaintiff collect a use tax from the purchasers.

██ Appellant contends that because it is an insurance company it is exempt from all state sales taxes. Article XIII, section 14 4/5, of the California Constitution provides in subdivision (f) that with certain exceptions not here applicable "The tax imposed on insurers by this section is in lieu of all other taxes and licenses, State, county, and municipal, upon such insurers and their property, . . ."

In the instant case the principal question involved is not immunity from a sales tax but whether the state was entitled to collect the amount of the use tax from Beneficial.

Section 6201 of the Revenue and Taxation Code imposes an excise tax on the storage, use, or other consumption in this state of tangible personal property purchased from any retailer for storage, use, or other consumption in this state.

Section 6202 of the Revenue and Taxation Code provides that every person storing, using, or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax.

The use tax is imposed on the purchaser, not on the retailer or seller. (Compare § 6051, and see *Brandtjen & Kluge* v. *Fincher*, 44 Cal.App.2d Supp. 939 [111 P.2d 979].) Section 6203 requires the retailer to collect the use tax from the purchaser, and section 6204 states that the use tax which is required to be collected constitutes a debt.

Section 6015 of the Revenue and Taxation Code defines a retailer as a "seller who makes any retail sale." Section 6019 limits the definition by providing there must be "more than two retail sales of tangible personal property during any 12-month period. . . ." Beneficial under the facts stated above was therefore a "retailer" under this definition and its limitation and was required to collect a use tax.

Beneficial's constitutional exemption would not shield it from collecting the use tax.

In *City of Covington* v. *State Tax Com.*, 257 Ky. 84 [77 S.W.2d 386], the court was concerned with the Kentucky gross receipts tax. The act required the seller to collect the amount of the tax from the buyer. Certain charitable institutions claimed that they were exempt under section 5 of the

act which provided that "Every charitable and educational institution in the State of Kentucky and institutions thereof when engaged in activities made taxable by this act shall be completely exempt from its provisions." The court said at page 390 [77 S.W.2d]: "The *activity* 'made taxable by this act,' as we have seen, is not that of merchant or seller, but that the tax is imposed upon the *transaction* of sale and is chargeable to the buyer, though to be collected and accounted for by the merchant or seller for the compensation fixed by the statute; so that the exemption therein provided for applies to such institutions (therein named) only as *purchasers* and not as *sellers*. The inserted section of the act exonerated the institutions therein named (including the state itself) from the burden of eventual payor of the tax levied by the act, and when that was shifted from the seller to the purchaser the former is not the burden bearer of the tax, and becomes such only as a purchaser, who, unless exempt therefrom, must eventually pay the tax to the seller, as collector."

In *Colorado Nat. Bank of Denver* v. *Bedford*, 310 U.S. 41 [60 S.Ct. 800, 84 L.Ed. 1067], the question was presented whether the State of Colorado could require a national bank to collect from its customers a 2 per cent tax measured by the bank's charges for safe-deposit services. The state could not impose such a tax on the bank itself. It was assumed in the opinion that the tax would be invalid if levied on the bank. The court pointed out that Congress had not legislated against taxation of the customers of national banks. The tax was held valid.

These two decisions held that an exemption from taxation will not prevent the imposition of a tax on a third party not exempt from taxation, and the exempt taxpayer may be required to assess and collect such a tax.

 Appellant makes the further contention that it is exempt from any duty to collect or pay a use tax by virtue of section 6352 of the Revenue and Taxation Code. This section provides: "There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this State of tangible personal property the gross receipts from the sale of which, or the storage, use, or other consumption of which, this State is prohibited from taxing under . . . the Constitution of this State."

However the tax involved in the instant case is not one imposed upon the appellant, but, as pointed out in the cases hereinbefore cited, is one which an exempt taxpayer may be required to collect from a third party who is not exempt from taxation.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.